UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRADYUMNA KUMAR SAMAL,<br><br>      Petitioner,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | CASE NO. C21-1206JLR<br><br>ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE |

## I. INTRODUCTION

Before the court is Petitioner Pradyumna Kumar Samal's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Mot. (Dkt. # 1); Mem. (Dkt. # 2); Reply (Dkt. # 13); Suppl. to Reply (Dkt. # 14).) Respondent the United States of America ("the Government") opposes Mr. Samal's motion. (Resp. (Dkt. # 12).) The court has considered the motion, all submissions filed in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES Mr. Samal's motion.

## II. BACKGROUND

In April 2018, the Government filed a complaint against Mr. Samal, charging him with one count of visa fraud in violation of 18 U.S.C. § 1546. (*See* Compl. (CR Dkt. # 1).[1]) The Government filed a second superseding felony information in April 2019, charging Mr. Samal with one count of mail fraud in violation of 18 U.S.C. § 1341 (count 1), and one count of willfully failing to pay over employment taxes in violation of 26 U.S.C. § 7202 (count 2). (*See* 2d Superseding Information (CR Dkt. # 47).) The charge in count one of the second superseding information stems from Mr. Samal's submitting of fraudulent work visa petitions for foreign-national employees with the U.S. Department of State and the U.S. Department of Homeland Security by means of U.S. mail, while the charge in count two stems from Mr. Samal's companies' failure to pay over employment taxes to the Internal Revenue Service ("IRS") for the certain time periods in 2017 and 2018. (*See id.* at 2-6.) The charges relate to two companies run by Mr. Samal, Divensi, Inc. and Azimetry, Inc., both of which provided foreign-born workers for U.S. businesses under the H-1B visa program. (*See id.* at 1-6.) Mr. Samal and his companies submitted false statements and fraudulent documents in I-129 petitions and related materials to obtain H-1B visas for these foreign-born workers. (*See id.* at 4-6 (alleging that Mr. Samal falsely claimed in the petitions that the foreign-born workers "had already been earmarked" for existing, specialty projects at his companies); *see also* Plea Agreement (CR Dkt. # 51) at 6-8.) Mr. Samal's goal was allegedly to build a

---

[1] The court uses "Dkt." to refer to docket entries in this case and "CR Dkt." to refer to docket entries in Mr. Samal's criminal case, *United States v. Samal*, CR18-0214JLR.

"bench" of available workers that he could market to his clients and fill their demands faster than any competitor could. (*See* 2d Superseding Information at 5-6.) In providing such workers to his clients, the Government alleges that he defrauded his clients by presenting the workers as people with lawful work status in the U.S., omitting that he had obtained that status for them by deceiving the Government. (*See id.* at 5-6; Plea Agreement at 8.)

A.   **Plea Negotiations and Agreement**

Mr. Samal, as well as his defense counsel,[2] state that he wanted to resolve the case in a way that would put him in the best possible position to avoid adverse immigration consequences. (*See* Resp. at 4; Ex. 2 to Resp. (Dkt. # 12-2); Samal Decl. (Dkt. # 13-15) ¶¶ 2-3.) In addition to minimizing his immigration consequences, Mr. Samal also states that he wanted to be sentenced to as little time in prison as possible. (*Compare* Samal Decl. ¶¶ 2-3, with Ex. 2 to Resp. (stating that Mr. Samal's "primary goal is to avoid deportation").)

Because of the additional charges that the Government allegedly planned to bring, and considering the potential adverse immigration consequences associated with an offense like visa fraud, defense counsel proposed that the Government dismiss the visa fraud charge and allow Mr. Samal to plead to a generic fraud charge, such as mail fraud. (*See* Resp. at 4-6; Hearon Decl. (Dkt. # 13-18) ¶¶ 3-7 (containing Mr. Samal's

---

[2] When the court refers to Mr. Samal's "defense counsel" or "counsel," it is referring to Craig Suffian and Emma Scanlan, as they were the counsel of record during Mr. Samal's plea negotiations, change of plea hearing, and sentencing. (*See generally* CR Dkt.; Mot.; Mem. (alleging ineffective assistance of counsel at sentencing).)

investigator's notes from Mr. Suffian and Ms. Scanlan's interviews).)  The Government agreed, dismissing the visa fraud charge and filing a second superseding information charging Mr. Samal with one count of mail fraud in violation of 18 U.S.C. § 1341 and one count of failure to collect or pay over tax in violation of 26 U.S.C. § 7202.  (*See* Resp. at 4-6; 2d Superseding Information at 1-6.)  Mr. Samal pleaded guilty to both of the counts contained in the second superseding information.  (*See* Plea Agreement.)  In the plea agreement, the parties agreed to the use of gain as an alternative measure of loss under U.S. Sentencing Guideline ("USSG") § 2B1.1(b)(1) for count one.  (*See id.* at 11.)  The agreement also states that the parties "are free to present arguments regarding the applicability of all other provisions of the United States sentencing Guidelines."  (*See id.*)

**B.     Sentencing and Appeal**

The U.S. Probation Office found Mr. Samal's total offense level for count one to be 33 based on several factors, including:  a base offense level of 7 pursuant to USSG § 2B1.1(a)(1); a sixteen-level upward deviation pursuant to USSG § 2B1.1(b)(1) because, based on the parties' agreement, the "loss" amount that resulted from Mr. Samal's fraud exceeded $1.5 million dollars; a two-level upward deviation pursuant to USSG § 2B1.1(b)(10) because a substantial part of the fraudulent scheme was committed from outside the United States and Mr. Samal used sophisticated means to carry out the scheme; a two-level upward deviation pursuant to USSG § 2B1.1(b)(11)(C)(I) because Mr. Samal used a means of identification unlawfully to obtain another means of identification; a four-level upward deviation for his leading role in the offense; and a two-level upward deviation for obstruction of justice.  (*See* Presentence Investigation

Report ("PSR") (CR Dkt. # 65) (sealed) at 9-10.) Although it found the total offense level for count two to be 20, it calculated the combined adjusted total offense level for both counts to be 33 based on the higher total offense level for count one. (*See id.*) Further, it found his criminal history category to be II based on: one criminal history point for his prior conviction for computer intrusion; and two points pursuant to USSG § 4A1.1(d) because he committed the instant offense while on probation. (*See id.* at 11-12.) Thus, it calculated the applicable sentencing guideline range to be 151 to 188 months. (*See id.* at 16.) However, it noted that if Mr. Samal provided sufficient documentation to support a three-level downward adjustment for acceptance of responsibility, the total offense level would be 30 and the applicable guideline range would be 108 to 135 months. (*See id.*)

Defense counsel objected to, among other things, the applicability of the various enhancements included in the PSR and insisted that the total offense level should be 21. (*See generally* Def. Obj. (Dkt. # 13-6).) After receiving Mr. Samal's objections (Def. Obj.) and the Government's response (Gov. Obj. (Dkt. # 13-7)), the U.S. Probation Office filed an amended PSR prior to sentencing, which included the same total offense level, criminal history category, and applicable sentencing guideline range calculations as the original PSR. (*Compare* PSR, *with* Am. PSR (CR Dkt. # 69) (sealed).)

On September 20, 2019, the court sentenced Mr. Samal to eighty-seven months of imprisonment followed by three years of supervised release. (*See* 9/20/19 Min. Entry (CR Dkt. # 82); Judgment (CR Dkt. # 83); Sentencing Tr. (CR Dkt. # 89) at 33-35.) During the sentencing hearing, the court stated that the applicable guideline range was

87-108 months based on a criminal history category of II and a total offense level of 28, which the court calculated by rejecting the two-level upward deviation pursuant to USSG § 2B1.1(b)(11)(C)(I) and applying a three-level downward deviation for acceptance of responsibility. (*See* Sentencing Tr. at 3, 33-35.) Mr. Samal appealed his conviction, arguing only that his trial counsel had committed ineffective assistance of counsel by failing to object to the criminal history calculation in the PSR. (*See* Mem. at 8, 20; Resp. at 7; Not. of Appeal (CR Dkt. # 84).) The Ninth Circuit Court of Appeals dismissed his appeal, concluding that his ineffective assistance of counsel claim was barred by the appellate waiver in his plea agreement. (*See* Ninth Cir. Memorandum (CR Dkt. # 98).) Mr. Samal remains in federal custody at the Federal Detention Center at SeaTac as of the date of this order. (*See generally* CR Dkt.; Mem. at 3.)

C. **Mr. Samal's Motion to Vacate, Set Aside, or Correct His Sentence**

On September 3, 2020, Mr. Samal filed the instant motion to vacate, set aside, or correct his sentence, alleging that his counsel were ineffective during sentencing. (*See* Mem. at 8; Mot. at 4.[3]) He argues that defense counsel were ineffective at sentencing for failing to (1) object to the use of USSG § 2B1.1 to calculate the advisory guideline range

---

[3] In his motion, Mr. Samal states that "if there is any allegation of waiver or procedural default for not raising [the ineffective assistance of counsel at sentencing issue] on direct appeal, then appellate counsel was ineffective." (*See* Mot. at 5.) The court will not address this alternative claim in the instant order because the Government did not argue that his claims were waived or procedurally defaulted and Mr. Samal did not address this issue in his reply. (*See generally* Resp.; Reply.) Further, Mr. Samal's failure to raise the specific allegations of ineffective assistance of counsel at issue in the instant motion on direct appeal does not preclude the court from reviewing the merits of his motion. *See United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984) (stating that claims of ineffective assistance of counsel can be raised for the first time in a § 2255 motion); *Massaro v. United States*, 538 U.S. 500, 504 (2003) (same); *United States v. Ross*, 206 F.3d 896, 900 (9th Cir. 2000) (same).

for count one and (2) direct the court to follow the USSG § 2B1.1(c)(3) cross-reference and apply USSG § 2L2.1. (*See* Mot. at 4; Mem. at 8, 18-20.) Mr. Samal alleges that USSG § 2L2.1 more appropriately applied to the allegations of mail fraud in count one since they "were essentially allegations of immigration visa fraud" and that there was "no tactical reason" for his counsel to not argue that the court apply USSG § 2L2.1 to calculate count one's guideline range. (*See id.* at 8-14, 18-20; *see also* Reply at 2 (claiming that such arguments were not barred by the parties' plea agreement).) If his counsel had argued that the mail fraud count should have been cross-referenced to USSG § 2L2.1, Mr. Samal contends that there is a reasonable probability that the court would have applied the lower guideline range for count one of "either 37-46 months or 51-63 months" pursuant to USSG § 2L2.1. (*See* Mem. at 18-20.) In light of his counsel's alleged ineffectiveness, Mr. Samal argues that the court should hold a new sentencing hearing and apply "the correct" guideline range.[4]

### III. ANALYSIS

The court begins by addressing the legal standard for motions under 28 U.S.C. § 2255. It then discusses whether an evidentiary hearing is necessary before turning to its analysis of Mr. Samal's ineffective assistance of counsel claims.

**A. Legal Standard for Motions Under 28 U.S.C. § 2255**

A petitioner seeking relief under 28 U.S.C. § 2255 must prove the existence of an error rendering his conviction unlawful. *See Simmons v. Blodgett*, 110 F.3d 39, 42 (9th

---

[4] Mr. Samal also states that the court should reconsider his sentence as to count two during the new sentencing hearing. (*See* Mem. at 9 n.4.)

ORDER - 7

Cir. 1997); *see also Johnson v. Zerbst*, 304 U.S. 458, 468-69 (1938); *Bell v. United States*, No. C19-2018JCC, 2020 WL 3542503, at *2 (W.D. Wash. June 30, 2020). A prisoner in custody for a federal law violation may move to vacate, set aside, or correct the sentence under four circumstances: where (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). Pursuant to § 2255(f), a petition for habeas relief must be brought within one year of the date on which the judgment of conviction became final. *See id.* § 2255(f)(1).

Mr. Samal seeks relief pursuant to § 2255, asserting that he was denied his Sixth Amendment right to effective assistance of counsel at sentencing. (*See generally* Mot.; Mem.) Because he is currently incarcerated, he meets § 2255's "custody" requirement. *See Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002); (*see also* Mem. at 3). Moreover, the court finds that Mr. Samal timely filed the instant motion. His judgment of conviction became final on November 9, 2020, which was when the time for him to file a petition for certiorari elapsed, and he filed the instant motion on September 3, 2021.[5] *See* 28 U.S.C. § 2255(f) (establishing a one-year statute of limitations); *Griffith v.*

---

[5] The normal time for filing a petition for a writ of certiorari is 90 days, *see* Sup. Ct. R. 13, making September 9, 2020, the date Mr. Samal's judgment would have become final. However, on March 19, 2020, due to COVID-19, the Supreme Court extended the time for filing a petition for a writ of certiorari to 150 days, *see*. Order Relating to COVID-19 and Petitions for Certiorari, 589 U.S. __ (2020), making the date Mr. Samal's judgment became final November 9, 2020. *See also* Order Rescinding March and April 2020 Orders Relating to COVID-19, 594 U.S. __ (2021) (revoking the 150-day rule for judgments issued on or after July 19, 2021).

*Kentucky*, 479 U.S. 314, 321 n.6 (1987) (stating that a conviction is final in the context of habeas review when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied"); (*see also* Ninth Cir. Memorandum). Accordingly, Mr. Samal's motion is properly before the court.

**B.   Evidentiary Hearing**

As a preliminary matter, the court determines that an evidentiary hearing on the merits of this matter is unnecessary. Under § 2255, the court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994). However, "[n]o hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989); *United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004) (holding that no evidentiary hearing is required unless the petitioner raises "detailed and controverted issues of fact"). Here, the court concludes that the detailed record in this matter is a sufficient basis on which to decide Mr. Samal's claims and determine that he is entitled to no relief. Accordingly, the court exercises its discretion not to hold an evidentiary hearing. *See Shah*, 878 F.2d at 1158.

**C.   Ineffective Assistance of Counsel**

The court begins with the legal standard governing ineffective assistance of counsel claims before turning to its analysis of Mr. Samal's claim.

1. *Strickland* Standard

Mr. Samal's ineffective assistance of counsel claims are controlled by *Strickland v. Washington*, 466 U.S. 668 (1984). To show ineffective assistance under *Strickland*, a petitioner must prove that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Id.* at 688, 694. To establish that counsel's performance was deficient, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (stating that the proper measure of attorney conduct remains reasonableness under prevailing professional norms). The court considers whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *see also id.* at 687 (noting that "counsel [must have] made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"). At this step, judicial scrutiny is highly deferential: there is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id.* at 689; *Cullen v. Pinholster*, 563 U.S. 170, 191 (2011) (concluding that the reviewing court begins "with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy'" (quoting *Strickland*, 466 U.S. at 689)).

To establish that counsel's performance prejudiced the defense, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at

694; *see also id.* at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). Thus, even if counsel made a professionally unreasonable error, it does not warrant setting aside the judgment if the error had no effect on the judgment. *Id.* at 691; *Pinholster*, 563 U.S. at 189 ("requir[ing] a 'substantial,' not just 'conceivable,' likelihood of a different result" to establish prejudice (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011))).

The *Strickland* two-prong analysis applies to ineffective assistance of counsel challenges concerning sentencing. *See Daire v. Lattimore*, 812 F.3d 766, 767-68 (9th Cir. 2016) (first citing *Glover v. United States*, 531 U.S. 198, 203-04 (2001); and then citing *Lafler v. Cooper*, 566 U.S. 156 (2012)); *see also Treddenbarger v. United States*, No. C20-1755JCC, 2021 WL 1854934, at *2 (W.D. Wash. May 10, 2021). A court addressing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test if the petitioner's showing is insufficient as to one prong. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* Moreover, allegations that are speculative and conclusory are insufficient to prove that counsel provided ineffective assistance. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

2. <u>Analysis of Mr. Samal's Ineffective Assistance of Counsel Claims</u>

Before turning to the merits of Mr. Samal's ineffective assistance of counsel claims, the court first addresses the parties' arguments regarding the scope of the plea agreement. (*See generally* Resp. at 9-11; Reply at 7-11.) Mr. Samal claims that the "plea

agreement did not require that the parties calculate the sentence [for count one] exclusively under [USSG] § 2B1.1, without regard to the cross-reference provision of that same guideline," and left defense counsel free to argue that USSG § 2L2.1 applied through the cross-reference.  (*See* Reply at 2 (arguing that the "agreement that gain, not loss, would be used under § []2B l.1(b)(1) . . . should be seen only as a protection to Mr. Samal" if the Government argued at sentencing that the cross-reference should not be applied in this case).)  The Government, on the other hand, contends that Mr. Samal's counsel could not have argued that USSG § 2L2.1 applied through the cross-reference without breaching the terms of the plea agreement, which applied USSG § 2B1.1 to count one's guideline calculation.  (*See* Resp. at 8-10 (citing Plea Agreement at 11).)

"Plea agreements are contractual in nature and are measured by contract law standards."  *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993); *United States v. Cope*, 527 F.3d 944, 949-50 (9th Cir.2008).  Therefore, "[i]f the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine their meaning."  *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000); *United States v. Hammond*, 742 F.3d 880, 883 (9th Cir. 2014) (noting that the court must "enforce the literal terms of a plea agreement, construing only ambiguous language in the defendant's favor"); *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001).  Paragraph 13 of the parties' plea agreement states that count one's guidelines calculation will be based on "[t]he use of gain as an alternative measure of loss under USSG § 2B1.1(b)(1)."  (*See* Plea Agreement at 11.)  Pursuant to the clear and unambiguous terms of this paragraph, the court concludes that

the parties agreed that USSG § 2B1.1(b)(1), which is a specific offense characteristic that may apply when an offense's applicable guideline is USSG § 2B1.1, applied to count one. (*See* Plea Agreement at 11); USSG § 2B1.1(b). Because the parties agreed to apply this specific offense characteristic to count one, the court also concludes that the plea agreement bound the parties to apply USSG § 2B1.1 to calculate count one's advisory guideline range;[6] any other interpretation would render the plea agreement's statement regarding the application of USSG § 2B1.1(b)(1) meaningless.[7] *See* USSG § 1B1.1; *United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2016) (declining to accept the defendant's interpretation of the plea agreement, in part, because it "would render meaningless the express waiver of the right to challenge 'any sentencing guideline determinations,' contrary to basic principles of contract interpretation"); *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997) (per curiam) (rejecting the defendant's proposed reading of the plea agreement because "it would render the waiver meaningless").

//

---

[6] In calculating an offense's guideline range, the court must first determine: (1) "the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction"; and (2) "the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed." USSG § 1B1.1. Accordingly, for a specific offense characteristic to apply to an offense, the entire offense guideline section that the specific offense characteristic is found in must also apply to the offense. *See id.*

[7] The plea agreement also states that the parties are "are free to present arguments regarding the applicability of all other provisions of the United States sentencing Guidelines." (*See* Plea Agreement at 11.) Thus, the parties were free to raise arguments regarding, for example, the applicability of the adjustments provided for in Chapter 3, *see* USSG §§ 1B1.1, 3A-E, or the applicability of other specific offense characteristics in USSG § 2B1.1.

Turning to the merits of Mr. Samal's claims, the court concludes that he cannot show deficient performance or prejudice under *Strickland*. First, Mr. Samal cannot demonstrate that his counsel were ineffective under *Strickland* for their alleged failure to (1) object to the application of USSG § 2B1.1 as to count one at sentencing and (2) direct the court to follow the USSG § 2B1.1(c)(3) cross-reference and apply USSG § 2L2.1 to calculate count one's advisory guideline range. If defense counsel had asked the court to follow the USSG § 2B1.1(c)(3) cross-reference[8] and apply USSG § 2L2.1, they would have been asking the court to apply the entire offense guideline of § 2L2.1—"*i.e.*, [its] base offense level, specific offense characteristics, cross references, and special instructions"—to count one. *See* USSG § 1B1.5 (stating that "[a] cross reference (an instruction to apply another offense guideline) refers to the [application of the] entire offense guideline"). Thus, such an argument would have breached the plea agreement, potentially exposing Mr. Samal to additional charges and an enhanced sentence, because it leaves no room for the application of § 2B1.1(b)(1)'s specific offense characteristic enhancement based on the amount of gain. (*See, e.g.*, Hearon Decl. ¶¶ 2-8 (noting that, based on the parties' interviews with Mr. Suffian and Ms. Scanlan, defense counsel

---

[8] The cross-reference in USSG § 2B1.1(c)(3) is not simply a reference to apply a specific subsection of another guideline. Instead, it is a reference to apply an entirely different offense guideline. *See* USSG § 2B1.1(c)(3) ("If (A) neither subdivision (1) nor (2) of this subsection applies; (B) the defendant was convicted under a statute proscribing false, fictitious, or fraudulent statements or representations generally (e.g., 18 U.S.C. § 1001, § 1341, § 1342, or § 1343); and (C) the conduct set forth in the count of conviction establishes an offense specifically covered by another guideline in Chapter Two (Offense Conduct), apply that other guideline."). Such a reference "incorporate[s] the specific offense characteristics, cross references, and special instructions as well as the base offense level" of that other offense guideline. *See id.* § 1B1.5; *id.* cmt. 1.

believed that they could not argue that USSG § 2L2.1 applied because "they had stipulated in the plea that they would use the B guideline").)

Accordingly, the court cannot conclude that defense counsel's failure to object to the application of USSG § 2B1.1 and direct the court to apply USSG § 2L2.1, arguments that would have breached the parties' plea agreement, fell outside the "wide range of reasonably effective assistance." *See Strickland*, 466 U.S. at 689-91 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."); *see also Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel."); *Silva v. Woodford*, 279 F.3d 825, 844 (9th Cir. 2002) (noting that Supreme Court precedent dictates that counsel commits no error when counsel makes informed strategic decision (citing *Burger v. Kemp*, 483 U.S. 776 (1987))).[9] Moreover, the court finds that Mr. Samal's counsel were reasonable in instead

---

[9] In his reply, Mr. Samal raises a new ineffective assistance of counsel claim based on his counsel's failure to seek clarification on the scope of the plea agreement and discuss the option of breaching the plea agreement with him:

> [I]f in fact defense counsel believed that using the cross-reference provisions of § 2B1.1(c)(3) might breach the plea agreement, counsel never raised the issue with the Government, never sought clarification by the [c]ourt by filing a motion, and, significantly, never discussed this option with their client. This failure to give their client the decision to determine the objective of the representation and the choice as to the plea in a criminal case was part of their ineffectiveness.

(*See* Reply at 2.) "A habeas petitioner, however, may not raise a claim for the first time in a reply brief." *Descoteaux v. United States*, No. CR16-5246BHS, 2019 WL 6251042, at *14 (W.D. Wash. Nov. 22, 2019) (citing *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994)). Accordingly, the court declines to consider this new claim of ineffective assistance of counsel that Mr. Samal raised for the first time in reply. (*Compare* Reply, *with* Mot.; Mem.)

spending their time at sentencing and in their sentencing materials focusing on the evidence of mitigation, attempting to portray Mr. Samal as someone who accepted responsibility for what he had done, and persuading the court that the two-level upward deviation based on USSG § 2B1.1(b)(11)(C)(i) should not apply. (*See* Sentencing Tr. at 23-24, 33-40 (establishing that the court accepted defense counsel's arguments regarding USSG § 2B1.1(b)(11)(C)(i) and acceptance of responsibility, which resulted in a lower total offense level and advisory guideline range); Def. Sentencing Memo. (CR Dkt. # 76).)

Second, even if Mr. Samal could show that his counsel were ineffective, he fails to establish that his counsel's alleged deficiencies caused him to suffer any cognizable prejudice under *Strickland*. Mr. Samal received a sentence at the low end of the applicable advisory guideline range for his offenses, and he fails to demonstrate that the result would have been more favorable had his counsel objected to the application of USSG § 2B1.1 and directed the court to apply USSG § 2L2.1. (*See* Sentencing Tr. at 33-40; Judgment.) Had Mr. Samal's counsel raised such arguments, they would have been in breach of the plea agreement and would have exposed Mr. Samal to prosecution "for all offenses for which the Government has evidence," including those that were

//

---

Even if the court were to consider the merits of this claim, it would conclude that Mr. Samal fails to establish that he suffered any discernable prejudice from their alleged ineffectiveness, for the same reasons Mr. Samal fails to establish prejudice regarding his other ineffective counsel claims. Further, the court cannot conclude that his counsel were ineffective for failing to discuss an argument with him that, had it been raised at sentencing, would have breached his plea agreement. *See Baumann*, 692 F.2d at 572; *Strickland*, 466 U.S. at 689-91.

dismissed or not charged pursuant to the plea agreement.[10] (*See* Plea Agreement at 12.) These additional charges may have exposed Mr. Samal to an enhanced sentence and/or additional adverse immigration consequences. (*See* Resp. at 11 (noting that some of the additional charges the Government may have pursued would have carried mandatory minimum sentences).) Given Mr. Samal's "primary goal" to avoid deportation and his desire to avoid a lengthy prison sentence (*see* Ex. 2 to Resp.; Samal Decl. ¶¶ 2-3), breaching the plea agreement would have placed both of those goals in jeopardy. If anything, Mr. Samal would have been prejudiced *if* his counsel had made arguments regarding the cross-reference and the application of USSG § 2L2.1, not by their failure to raise such arguments. Accordingly, Mr. Samal fails to prove that there "is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the [sentencing] proceeding would have been different." *See Strickland*, 466 U.S. at 694-95 (noting that the analysis focuses on the "likelihood of a result more favorable to the defendant"); *United States v. Sanchez-Ramirez*, No. CR10-6041FVS, 2013 WL 5488789, at *4 (E.D. Wash. Oct. 1, 2013) ("With respect to a claim of ineffective assistance in sentencing, the defendant must show a reasonable probability that, but for counsel's substandard performance, he would have received a less severe sentence." (quoting *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013))).

//

---

[10] The Government states that, by entering into a plea agreement, it "agreed not to file additional charges, including multiple charges of aggravated identity theft which would have carried mandatory minimum sentences," and "agreed not to pursue a separate prosecution for Samal's theft of his employees' 401k contributions." (Resp. at 11.)

In sum, there is nothing to suggest to the court that Mr. Samal's counsel were constitutionally deficient for failing to address the issues listed in his § 2255 motion. Even if his counsel were ineffective in some way, nothing in the record suggests that he was prejudiced by his counsel's alleged deficiencies.

**D.     Certificate of Appealability**

As a final matter, the court notes that a petitioner seeking post-conviction relief may appeal a district court's dismissal of a 28 U.S.C. § 2255 motion only after obtaining a certificate of appealability. A certificate of appealability may issue only where a petition has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the court concludes that Mr. Samal is not entitled to a certificate of appealability.

### IV.     CONCLUSION

For the foregoing reasons, the court DENIES Mr. Samal's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence (Dkt. # 1). The court DISMISSES this matter with prejudice and DECLINES to issue a certificate of appealability.

//

//

//

//

Dated this 4th day of January, 2022.

JAMES L. ROBART
United States District Judge

ORDER - 19